**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELYNNE JASON HOLMES | ) | CASE NO. |
| 8671 Springflower Road NW | ) | |
| Pickerington, Ohio 43147, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| NOVO NORDISK INC. | ) | |
| 800 Scudders Mill Road | ) | **JURY DEMAND ENDORSED** |
| Plainsboro, New Jersey 08536, | ) | **HEREIN** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Jacquelynne Jason Holmes, by and through undersigned counsel, as her

Complaint against Defendant Novo Nordisk, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1.  Holmes is a resident of the city of Pickerington, Fairfield County, Ohio.

2.  At all times herein, Holmes was acting in the course and scope of her employment.

3.  Novo Nordisk is a foreign corporation that does business in the state of Ohio.

4.  On or about September 28, 2012, Novo Nordisk presented Holmes with a letter offering her

    employment ("Offer Letter").

5.  Novo Nordisk wrote the Offer Letter.

6.  On or about September 29, 2012, Holmes signed the Offer Letter.

7.  The Offer Letter states, in relevant part, "…I agree that any legal action, claim, or proceeding

    that may be filed in court arising out of or relating to my employment or the termination of my

employment with Novo Nordisk Inc. shall only be brought in a state court located in the county of my primary place of employment with Novo Nordisk Inc. or in the nearest federal court…"

8. Holmes primarily worked with Novo Nordisk in Fairfield County, Ohio.

9. The United States District Court for the Southern District of Ohio is the "nearest federal court" to Fairfield County, Ohio.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Holmes is alleging a Federal Law Claim under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); and 42 U.S.C. § 1981.

11. This Court has supplemental jurisdiction over Holmes's state law claims pursuant to 28 U.S.C. § 1367 as Holmes's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

12. Novo Nordisk is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

13. Novo Nordisk is and, at all times herein, was an employer within the meaning of EPA.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **FACTS**

15. Holmes is a former employee of Novo Nordisk.

16. On or about October 1, 2012, Holmes began working for Novo Nordisk.

17. Novo Nordisk hired Holmes as a Diabetes Care Specialist.

18. Novo Nordisk is a pharmaceutical company.

19. Novo Nordisk does not have a physical office in Ohio.

20. Employees of Novo Nordisk in Ohio all work from primarily from home.

21. During Holmes's employment with Novo Nordisk, Holmes worked from her home in Pickerington, Ohio.

22. Holmes is female.

23. Holmes is African American.

24. At the time when Novo Nordisk hired Holmes, Novo Nordisk knew that Holmes is female.

25. At the time when Novo Nordisk hired Holmes, Novo Nordisk knew that Holmes is African American.

26. At the time when Holmes began working for Novo Nordisk, Holmes had approximately 12 years of relevant work experience.

27. Novo Nordisk hired Holmes at a starting salary of $83,000 per year.

28. Holmes received a positive performance review in 2013.

29. Holmes received a positive performance review in 2014.

30. Holmes received a positive performance review in 2015.

31. Holmes received a positive performance review in 2016.

32. Holmes received a positive performance review in 2017.

33. Holmes received a positive performance review in 2018.

34. Holmes received a positive performance review in 2019.

35. James Tackett was involved in the decision to hire Holmes.

36. Tackett was a district business manager for Novo Nordisk.

37. Tackett was Holmes's direct supervisor.

38. During Holmes's employment with Novo Nordisk, Tackett worked from his home in Dublin, Ohio.

39. Tackett is male.

40. Tackett is Caucasian.

41. Tackett and Novo Nordisk's human resources department ("HR") were involved in decisions about Holmes's salary.

42. Tackett assigned the territory in which Holmes worked.

43. On or about October 1, 2012, Novo Nordisk hired Bryan Bigelow.

44. Novo Nordisk hired Bigelow as a Diabetes Care Specialist.

45. Bigelow and Holmes had the same job title.

46. Bigelow and Holmes had the same job duties.

47. Bigelow is male.

48. Bigelow is Caucasian.

49. At the time when Novo Nordisk hired Bigelow, Novo Nordisk knew that Bigelow is male.

50. At the time when Novo Nordisk hired Bigelow, Novo Nordisk knew that Bigelow is Caucasian.

51. During his time working for Novo Nordisk, Bigelow worked from his home in Westerville, Ohio.

52. At the time when Bigelow began working for Novo Nordisk, Bigelow had approximately 10 years of relevant work experience.

53. Holmes had more relevant work experience than Bigelow.

54. Tackett was involved in the decision to hire Bigelow.

55. Tackett was Bigelow's direct supervisor.

56. Tackett and HR were involved in decisions about Bigelow's salary.

57. Tackett assigned the territory in which Bigelow worked.

58. Novo Nordisk hired Bigelow at a starting salary of $95,000 per year.

59. Bigelow and Holmes began working for Novo Nordisk on the same day.

60. Novo Nordisk paid a lower starting salary to Holmes than Bigelow.

61. Throughout Holmes's employment, Novo Nordisk paid a lower salary to Holmes than Bigelow.

62. Paying Holmes a lower starting salary than Bigelow was an adverse employment action.

63. Paying Holmes a lower salary than Bigelow was an adverse employment action.

64. Novo Nordisk paid Holmes a lower starting salary than Bigelow because of gender.

65. Novo Nordisk paid Holmes a lower starting salary than Bigelow because of race.

66. Novo Nordisk paid Holmes a lower salary than Bigelow because of gender.

67. Novo Nordisk paid Holmes a lower salary than Bigelow because of race.

68. On or about October 1, 2012, Melissa Yeso began working for Novo Nordisk.

69. Novo Nordisk hired Yeso as a Diabetes Care Specialist.

70. Yeso and Holmes had the same job title.

71. Yeso and Holmes had the same job duties.

72. Yeso is Caucasian.

73. At the time when Novo Nordisk hired Yeso, Novo Nordisk knew that Yeso is Caucasian.

74. During her time working for Novo Nordisk, Yeso worked from her home in Belmont County, Ohio.

75. Novo Nordisk hired Yeso at a starting salary of $85,000 per year.

76. Yeso and Holmes began working for Novo Nordisk on the same day.

77. Novo Nordisk paid a lower starting salary to Holmes than Yeso.

78. Throughout Holmes's employment, Novo Nordisk paid a lower salary to Holmes than Yeso.

79. Paying Holmes a lower starting salary than Yeso was an adverse employment action.

80. Paying Holmes a lower salary than Yeso was an adverse employment action.

81. Novo Nordisk paid Holmes a lower starting salary than Yeso because of race.

82. Novo Nordisk paid Holmes a lower salary than Yeso because of race.

83. In or about 2013, Novo Nordisk hired Louie Guagenti.

84. Novo Nordisk hired Guagenti as a Diabetes Care Specialist.

85. Guagenti and Holmes had the same job title.

86. Guagenti and Holmes had the same job duties.

87. Guagenti is male.

88. Guagenti is Caucasian.

89. At the time when Novo Nordisk hired Guagenti, Novo Nordisk knew that Guagenti is male.

90. At the time when Novo Nordisk hired Guagenti, Novo Nordisk knew that Guagenti is Caucasian.

91. During his time working for Novo Nordisk, Guagenti worked from his home in Columbus, Ohio.

92. Tackett was involved in the decision to hire Guagenti.

93. Tackett was Guagenti's direct supervisor.

94. Tackett and HR were involved in decisions about Guagenti's salary.

95. Tackett assigned the territory in which Guagenti worked.

96. Novo Nordisk hired Guagenti at a starting salary higher than Holmes's.

97. Novo Nordisk paid a lower starting salary to Holmes than Guagenti.

98. Throughout Holmes's employment, Novo Nordisk paid a lower salary to Holmes than Guagenti.

99. Paying Holmes a lower starting salary than Guagenti was an adverse employment action.

100. Paying Holmes a lower salary than Guagenti was an adverse employment action.

101. Novo Nordisk paid Holmes a lower starting salary than Guagenti because of gender.

102. Novo Nordisk paid Holmes a lower starting salary than Guagenti because of race.

103. Novo Nordisk paid Holmes a lower salary than Guagenti because of gender.

104. Novo Nordisk paid Holmes a lower salary than Guagenti because of race.

105. In or about 2010, Novo Nordisk hired Othello Repuyan, Jr.

106. Novo Nordisk hired Repuyan as a Diabetes Care Specialist.

107. Repuyan and Holmes had the same job title.

108. Repuyan and Holmes had the same job duties.

109. Repuyan is male.

110. Repuyan is Filipino.

111. Repuyan is not African American.

112. At the time when Novo Nordisk hired Repuyan, Novo Nordisk knew that Repuyan is male.

113. At the time when Novo Nordisk hired Repuyan, Novo Nordisk knew that Repuyan is Filipino.

114. At the time when Novo Nordisk hired Repuyan, Novo Nordisk knew that Repuyan is not African American.

115. During his time working for Novo Nordisk, Repuyan worked from his home in Zanesville, Ohio.

116. Tackett was involved in the decision to hire Repuyan.

117. Tackett was Repuyan's direct supervisor.

118. Tackett and HR were involved in decisions about Repuyan's salary.

119. Tackett assigned the territory in which Repuyan worked.

120. Novo Nordisk hired Repuyan at a starting salary higher than Holmes's.

121. Novo Nordisk paid a lower starting salary to Holmes than Repuyan.

122. Throughout Holmes's employment, Novo Nordisk paid a lower salary to Holmes than Repuyan.

123. Paying Holmes a lower starting salary than Repuyan was an adverse employment action.

124. Paying Holmes a lower salary than Repuyan was an adverse employment action.

125. Novo Nordisk paid Holmes a lower starting salary than Repuyan because of gender.

126. Novo Nordisk paid Holmes a lower starting salary than Repuyan because of race.

127. Novo Nordisk paid Holmes a lower salary than Repuyan because of gender.

128. Novo Nordisk paid Holmes a lower salary than Repuyan because of race.

129. Novo Nordisk does not have a physical office in Ohio.

130. Novo Nordisk's employees in Ohio work from their respective homes.

131. During Holmes's employment, Holmes lived in Central Ohio.

132. During Holmes's employment, Tackett lived in Central Ohio.

133. During Holmes's employment, Bigelow lived in Central Ohio.

134. During Holmes's employment, Guagenti lived in Central Ohio.

135. During Holmes's employment, Repuyan lived in Central Ohio.

136. The same administrative unit hired Holmes and Bigelow.

137. The same administrative unit set the wages of Holmes and Bigelow.

138. The same administrative unit assigned the work locations of Holmes and Bigelow.

139. The daily duties of Holmes and Bigelow were virtually identical.

140. Holmes and Bigelow performed under similar working conditions.

141. Holmes and Bigelow worked at the same "establishment" within the meaning of EPA.

142. Holmes and Bigelow performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

143. The same administrative unit hired Holmes and Guagenti.

144. The same administrative unit set the wages of Holmes and Guagenti.

145. The same administrative unit assigned the work locations of Holmes and Guagenti.

146. The daily duties of Holmes and Guagenti were virtually identical.

147. Holmes and Guagenti performed under similar working conditions.

148. Holmes and Guagenti worked at the same "establishment" within the meaning of EPA.

149. Holmes and Guagenti performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

150. The same administrative unit hired Holmes and Repuyan.

151. The same administrative unit set the wages of Holmes and Repuyan.

152. The same administrative unit assigned the work locations of Holmes and Repuyan.

153. The daily duties of Holmes and Repuyan were virtually identical.

154. Holmes and Repuyan performed under similar working conditions.

155. Holmes and Repuyan worked at the same "establishment" within the meaning of EPA.

156. Holmes and Repuyan performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

157. The daily duties of Holmes and Yeso were virtually identical.

158. Holmes and Yeso performed under similar working conditions.

159. Novo Nordisk paid male employees at the same establishment more than Holmes.

160. Novo Nordisk did not pay employees on the basis of a seniority system.

161. Novo Nordisk did not use a seniority system to determine employees' starting salaries.

162. Novo Nordisk did not pay employees on the basis of a merit system.

163. Novo Nordisk did not use a merit system to determine employees' starting salaries.

164. Novo Nordisk did not pay employees on the basis of a system which measures earnings by quantity or quality of production.

165. Novo Nordisk did not use a system which measures earnings by quantity or quality of production to determine employees' starting salaries.

166. Novo Nordisk did not pay employees on the basis of their number of years of experience.

167. Novo Nordisk did not use employees' number of years of experience to determine employees' starting salaries.

168. Novo Nordisk did not pay employees on the basis of their education.

169. Novo Nordisk did not use employees' education to determine employees' starting salaries.

170. Novo Nordisk did not pay employees on the basis of any other factor other than sex.

171. In or about March 2013, Holmes learned that she was being paid less than Bigelow.

172. In or about March 2013, Holmes asked Tackett why she was being paid less than most other employees.

173. Holmes opposed discrimination.

174. In or about March 2013, Tackett told Holmes that she was paid less than Bigelow because diabetes care specialists' starting salaries were based on their pay at prior jobs.

175. In or about March 2013, Tackett told Holmes that most employees who came to Novo Nordisk from Holmes's previous employer, GlaxoSmithKlein, had below-average starting salaries.

176. Novo Nordisk alleged that the pay disparity existed solely because diabetes care specialists' starting salaries were based on their salaries at their previous job ("Disparity Excuse")

177. Novo Nordisk did not base Guagenti's starting salary on his salary from his previous job.

178. The Disparity Excuse had no basis in fact.

179. The Disparity Excuse was not the real reason why Holmes was paid less than her coworkers.

180. Novo Nordisk did not base diabetes care specialists' starting salaries on experience.

181. Novo Nordisk did not use any other factor other than sex to determine employees' starting salaries.

182. In *Balmer v. HCA, Inc.*, the United States Court of Appeals for the Sixth Circuit held: "Consideration of a new employee's prior salary is allowed **as long as the employer does not rely solely on prior salary** to justify a pay disparity." Balmer v. HCA, Inc., 423 F.3d 606, 612 (6th Cir. 2005), abrogated on other grounds by Fox v. Vice, 563 U.S. 826 (2011) (**emphasis** added).

183. Novo Nordisk paid male employees more than Holmes for comparable work.

184. Paying male employees more than Holmes for comparable work was an adverse employment action.

185. Novo Nordisk knowingly paid male employees more than Holmes for comparable work.

186. Novo Nordisk intentionally paid male employees more than Holmes for comparable work.

187. Novo Nordisk willfully paid male employees more than Holmes for comparable work.

188. Novo Nordisk paid male employees more than Holmes for comparable work because of gender.

189. Novo Nordisk paid non-African-American employees more than Holmes for comparable work.

190. Paying non-African-American employees more than Holmes for comparable work was an adverse employment action.

191. Novo Nordisk knowingly paid non-African-American employees more than Holmes for comparable work.

192. Novo Nordisk intentionally paid non-African-American employees more than Holmes for comparable work.

193. Novo Nordisk willfully paid non-African-American employees more than Holmes for comparable work.

194. Novo Nordisk paid non-African-American employees more than Holmes for comparable work because of race.

195. Novo Nordisk gave employees annual raises based on their performance.

196. Novo Nordisk gave employees annual raises based on a percentage of the employee's salary.

197. Paragraphs 198 through 209 describe a theoretical mathematical example ("Mathematical Example") using two employees named "Employee A" and "Employee B," who both start

working for a company, named "Company," in "Year 1." In the Mathematical Example, Employee A's salary in Year 1 is $83,000, and Employee B's salary in Year 1 is $95,000.

198. In the Mathematical Example, Employee A and Employee B started their employment at Company with a $12,000 difference in their wages.

199. In the Mathematical Example, Employee A and Employee B each receive a 5% salary increase per year.

200. In the Mathematical Example, in Year 2, a 5% salary increase causes Employee A's salary to increase to $87,150.

201. In the Mathematical Example, in Year 3, a 5% salary increase causes Employee A's salary to increase to $91,507.50.

202. In the Mathematical Example, in Year 4, a 5% salary increase causes Employee A's salary to increase to $96,082.88 (rounded to the nearest cent).

203. In the Mathematical Example, in Year 5, a 5% salary increase causes Employee A's salary to increase to $100,887.02 (rounded to the nearest cent).

204. In the Mathematical Example, in Year 2, a 5% salary increase causes Employee B's salary to increase to $99,750.

205. In the Mathematical Example, in Year 3, a 5% salary increase causes Employee B's salary to increase to $104,737.50.

206. In the Mathematical Example, in Year 4, a 5% salary increase causes Employee B's salary to increase to $109,974.38 (rounded to the nearest cent).

207. In the Mathematical Example, in Year 5, a 5% salary increase causes Employee B's salary to increase to $115,473.09 (rounded to the nearest cent).

208. In the Mathematical Example, in Year 1, Employee B's salary was $12,000 more than Employee A's salary.

209. In the Mathematical Example, in Year 5, Employee B's salary was $14,586.07 more than Employee A's salary.

210. When an employer gives employees salary increases based on a percentage of their pay, the impact of pay discrimination grows larger each year.

211. In 2012, Novo Nordisk paid Holmes less than similarly-situated male employees.

212. In 2012, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

213. In 2013, Novo Nordisk paid Holmes less than similarly-situated male employees.

214. In 2013, Novo Nordisk paid Holmes less than similarly-situated non-African-American

215. In 2014, Novo Nordisk paid Holmes less than similarly-situated male employees.

216. In 2014, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

217. In 2015, Novo Nordisk paid Holmes less than similarly-situated male employees.

218. In 2015, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

219. In 2016, Novo Nordisk paid Holmes less than similarly-situated male employees.

220. In 2016, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

221. In 2017, Novo Nordisk paid Holmes less than similarly-situated male employees.

222. In 2017, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

223. In 2018, Novo Nordisk paid Holmes less than similarly-situated male employees.

224. In 2018, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

225. In 2019, Novo Nordisk paid Holmes less than similarly-situated male employees.

226. In 2019, Novo Nordisk paid Holmes less than similarly-situated non-African-American employees.

227. In or about November 2018, Holmes applied for the position of health systems diabetes care specialist.

228. Holmes was qualified for the position of health systems diabetes care specialist.

229. The position of health systems diabetes care specialist would be a promotion from Holmes's position of diabetes care specialist.

230. In or about November 2018, two positions of health systems diabetes care specialist were available.

231. Novo Nordisk did not select Holmes for the position of health systems diabetes care specialist ("Non-Promotion").

232. Novo Nordisk hired Kasey Howell and Sandra Skarl for the positions of health systems diabetes care specialist.

233. Howell is male.

234. Howell is Caucasian.

235. Skarl is Caucasian.

236. In or about November 2018, Howell had worked for Novo Nordisk for less than three years.

237. In or about November 2018, Skarl had worked for Novo Nordisk for less than one year.

238. Holmes was more qualified than Howell for the position of health systems diabetes care specialist.

239. Holmes was more qualified than Skarl for the position of health systems diabetes care specialist.

240. In or about May 2019, after Novo Nordisk promoted Skarl to health systems diabetes care specialist, Skarl requested a demotion down to Holmes's vacated position because she was unable to perform the duties of health systems diabetes care specialist.

241. The Non-Promotion was an adverse employment action.

242. The Non-Promotion was an adverse action.

243. Novo Nordisk did the Non-Promotion because of Holmes's gender.

244. Novo Nordisk did the Non-Promotion because of Holmes's race.

245. On or about May 9, 2019, Holmes resigned from her employment with Novo Nordisk.

246. Holmes resigned from her employment because of the discrimination she was facing.

247. A reasonable person in Holmes's position would have felt compelled to resign.

248. As a direct and proximate result of Novo Nordisk's conduct, Holmes suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: PAY DISCRIMINATION BY GENDER, IN VIOLATION OF EPA

249. Holmes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

250. EPA states that no covered employer shall discriminate "within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

251. EPA does not define the term "establishment."

252. 29 C.F.R. § 1620.9 provides guidance about the meaning of the term "establishment" in EPA.

253. 29 C.F.R. § 1620.9(b) provides guidance about when employees working at different physical locations should be considered to be working at the same "establishment": "For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions."

254. Novo Nordisk does not have a physical office in Ohio.

255. Novo Nordisk's employees in Ohio work from their respective homes.

256. During Holmes's employment, Holmes lived in Central Ohio.

257. During Holmes's employment, Tackett lived in Central Ohio.

258. During Holmes's employment, Bigelow lived in Central Ohio.

259. During Holmes's employment, Guagenti lived in Central Ohio.

260. During Holmes's employment, Repuyan lived in Central Ohio.

261. The same administrative unit hired Holmes and Bigelow.

262. The same administrative unit set the wages of Holmes and Bigelow.

263. The same administrative unit assigned the work locations of Holmes and Bigelow.

264. The daily duties of Holmes and Bigelow were virtually identical.

265. Holmes and Bigelow performed under similar working conditions.

266. Holmes and Bigelow worked at the same "establishment" within the meaning of EPA.

267. Holmes and Bigelow performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

268. The same administrative unit hired Holmes and Guagenti.

16

269. The same administrative unit set the wages of Holmes and Guagenti.

270. The same administrative unit assigned the work locations of Holmes and Guagenti.

271. The daily duties of Holmes and Guagenti were virtually identical.

272. Holmes and Guagenti performed under similar working conditions.

273. Holmes and Guagenti worked at the same "establishment" within the meaning of EPA.

274. Holmes and Guagenti performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

275. The same administrative unit hired Holmes and Repuyan.

276. The same administrative unit set the wages of Holmes and Repuyan.

277. The same administrative unit assigned the work locations of Holmes and Repuyan.

278. The daily duties of Holmes and Repuyan were virtually identical.

279. Holmes and Repuyan performed under similar working conditions.

280. Holmes and Repuyan worked at the same "establishment" within the meaning of EPA.

281. Holmes and Repuyan performed "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

282. Novo Nordisk paid male employees at the same establishment more than Holmes.

283. Novo Nordisk did not pay employees on the basis of a seniority system.

284. Novo Nordisk did not use a seniority system to determine employees' starting salaries.

285. Novo Nordisk did not pay employees on the basis of a merit system.

286. Novo Nordisk did not use a merit system to determine employees' starting salaries.

287. Novo Nordisk did not pay employees on the basis of a system which measures earnings by quantity or quality of production.

17

288. Novo Nordisk did not use a system which measures earnings by quantity or quality of production to determine employees' starting salaries.

289. Novo Nordisk did not pay employees on the basis of their number of years of experience.

290. Novo Nordisk did not use employees' number of years of experience to determine employees' starting salaries.

291. Novo Nordisk did not pay employees on the basis of their education.

292. Novo Nordisk did not use employees' education to determine employees' starting salaries.

293. Novo Nordisk did not pay employees on the basis of any other factor other than sex.

294. Novo Nordisk did not use any other factor other than sex to determine employees' starting salaries.

295. In *Balmer v. HCA, Inc.*, the United States Court of Appeals for the Sixth Circuit held, "Consideration of a new employee's prior salary is allowed **as long as the employer does not rely solely on prior salary** to justify a pay disparity." Balmer v. HCA, Inc., 423 F.3d 606, 612 (6th Cir. 2005), abrogated on other grounds by Fox v. Vice, 563 U.S. 826 (2011) (**emphasis** added).

296. Novo Nordisk alleged that the Disparity Excuse was the reason for paying Holmes less than similarly-situated male employees.

297. Novo Nordisk knowingly paid Holmes less than male employees.

298. Novo Nordisk intentionally paid Holmes less than male employees.

299. Novo Nordisk willfully paid Holmes less than male employees.

300. As a result of Novo Nordisk's actions, Holmes suffered and will continue to suffer damages.

301. Holmes is entitled to an award of damages, including lost wages, liquidated damages, attorneys' fees, and costs.

## COUNT II: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

302. Holmes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

303. Holmes is a member of a statutorily protected class based on her gender under R.C. § 4112.02.

304. Novo Nordisk treated Holmes differently than other similarly situated employees based on her gender.

305. Novo Nordisk discriminated against Holmes on the basis of her gender throughout her employment with the company.

306. Novo Nordisk paid Holmes less than similarly-situated male employees on the basis of gender.

307. Novo did the Non-Promotion because of Holmes's gender.

308. Novo Nordisk's discrimination against Holmes based on her gender violates R.C. § 4112.01 *et seq.*

309. As a direct and proximate result of Novo Nordisk's conduct, Holmes suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

310. Holmes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

311. Holmes is a member of a statutorily protected class based on her race under R.C. § 4112.02.

312. Novo Nordisk treated Holmes differently than other similarly-situated employees based on her race.

313. Novo Nordisk discriminated against Holmes on the basis of her race throughout her employment with the company.

19

314. Novo Nordisk paid Holmes less than similarly-situated non-African-American employees on the basis of race.

315. Novo did the Non-Promotion because of Holmes's race.

316. Novo Nordisk's discrimination against Holmes based on her race violates R.C. § 4112.01 *et seq.*

317. As a direct and proximate result of Novo Nordisk's conduct, Holmes suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

318. Holmes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

319. Holmes is a member of a statutorily protected class based on her race under 42 U.S.C. § 1981.

320. Novo Nordisk treated Holmes differently than other similarly-situated employees based on her race.

321. Novo Nordisk discriminated against Holmes on the basis of her race throughout her employment with the company.

322. Novo Nordisk paid Holmes less than similarly-situated non-African-American employees on the basis of race.

323. Novo did the Non-Promotion because of Holmes's race.

324. Novo Nordisk's discrimination against Holmes based on her race violates 42 U.S.C. § 1981.

325. As a direct and proximate result of Novo Nordisk's conduct, Holmes suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Holmes respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Novo Nordisk retroactively to restore Holmes to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Novo Nordisk of compensatory and monetary damages to compensate Holmes for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Novo Nordisk in an amount in excess of $25,000;

(d) An award of liquidated damages against Novo Nordisk in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Holmes's claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Jacquelynne Jason Holmes*

**JURY DEMAND**

Plaintiff Holmes demands a trial by jury by the maximum number of jurors permitted.


*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)